# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5851 | **DATE** | 9/9/2003 |
| **CASE TITLE** | NEG MICON USA, INC. vs. NORTHERN ALTERNATIVE ENERGY, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 11/7/2003 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's motion for a temporary restraining order [14-1] is DENIED. Plaintiff's motion for a preliminary injunction is referred to Magistrate Judge Nolan.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 11 2003 | 18 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials JS | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 03 SEP 10 AM 10:59 | date mailed notice | |
| CG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

| | | |
|---|---|---|
| NEG MICON USA, INC., | ) | **DOCKETED** |
| Plaintiff, | ) | SEP 1 1 2003 |
| v. | ) | 03 C 5851 |
| NORTHERN ALTERNATIVE ENERGY and NAVITAS ENERGY, INC., | ) | Judge Ronald A. Guzmán |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This action originated when Plaintiff filed a complaint and a motion for temporary restraining order in state court. Defendants subsequently removed the action to this federal court. In summary, Plaintiff alleges that it is a manufacturer of wind turbines. It has several competitors, including Gamesa. Plaintiff asserts that it and Northern Alternative Energy ("NAE") entered into an agreement whereby Plaintiff would be NAE's exclusive provider of wind turbines for NAE's development of a wind power project in northern Illinois. This project was to be the first of its kind in Illinois. Plaintiff devoted significant resources to this project.

Subsequent to the execution of the above described agreement and after the first phase of the agreement had been completed, NAE's officers formed Navitas, which it then sold in large part to Gamesa. Navitas is now about to use Gamesa as its supplier of wind turbines. Plaintiff seeks to (1) enjoin Navitas from using another supplier of wind turbines; and (2) force Navitas to use NEG Micon as its supplier of wind turbines for the project. Plaintiff alleges that Navitas was the alter ego of NAE before Navitas' sale, and that NAE and Navitas are breaching Plaintiff's

1

exclusive contract. Alternatively, Plaintiff alleges that Navitas is tortiously interfering with Plaintiff's economic interest.

I.  **Jurisdiction**

Defendants removed this case based on diversity jurisdiction. Plaintiff is an Illinois corporation with its principal place of business in Illinois. Defendants are Minnesota corporations with their principal place of business in Minnesota. The amount in controversy appears to be substantially above the jurisdictional minimum.

II.  **TRO Standards**

To succeed in its bid for a temporary restraining order Plaintiff must show: (1) that it has a reasonable likelihood of success on the merits of its claim; (2) that no adequate remedy at law exists; (3) that it will suffer irreparable harm if the preliminary injunction is denied; (4) that the irreparable harm it will suffer without preliminary injunctive relief outweighs the irreparable harm the nonmoving party will suffer if the preliminary injunction is granted; and (5) that the injunction will not harm the public interest. *Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998).

A. **Reasonable Likelihood of Success on the Merits**

This burden is relatively light: plaintiff need only show that its "chances [for success] are better than negligible." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984). Plaintiff here has met this burden, but just barely. It has shown the existence of an

2

exclusive contract between it and NAE, the *Memorandum of Understanding* of October 21, 1999. Unfortunately the agreement does not fully support Plaintiff's contention that Plaintiff would be NAE's exclusive provider of wind turbines for NAE's development of a wind power project in northern Illinois. The operative paragraph of the one page memorandum of understanding is paragraph 2. But that paragraph does not appear to obligate the Defendant to develop a wind power project at all. It merely states that Plaintiff and Defendant *intend* to jointly *propose* a particular power project to the Illinois Clean Energy Trust sometime within the first quarter of the year 2000. It does not, on its face, appear to affirmatively bind either party to actually make such a proposal or to actually build a wind power project. The *Memorandum of Understanding* indicates that if such a project were to be undertaken at "either of the above mentioned candidates sites" Plaintiff would be the exclusive supplier of the wind turbines. But the language in paragraph 2 is not, as it is in paragraph 1, for example, that of an affirmative undertaking. Instead it speaks of future conditional intentions. Paragraph 2 speaks only of the parties' "intent" to present a proposal. It does not affirmatively bind either party to actually do so. It would be simple to state a binding obligation if one were intended, and indeed the parties have done just that with respect to the obligations spelled out in paragraph 1. Nowhere does paragraph 2 clearly state that the parties have agreed to develop or construct a wind power plant or project. Paragraph 2 does state in conditional terms that Plaintiff "would be" the exclusive supplier of the wind turbines for any project at either of the sites described in paragraph 1. The project Plaintiff seeks to enjoin is not at either of the two sites described in paragraph 1, although it is apparently directly adjoining one of the sites.

In short, the agreement clearly reflects that the parties contemplated - were considering - some joint future project development and that the binding contractual undertakings described in paragraph 1 were preliminary to such a future project. It is not at all clear, however, that the parties intended to be bound or obligated to actually build such a project at the time of the signing of the *Memorandum of Understanding*. If the parties did intend such an obligation, however, Plaintiff has made a substantial showing that the corporate formalities notwithstanding, Navitas was formed by NAE for the very purpose of constructing such a project in lieu of the project contemplated in the *Memorandum of Understanding*. We find that given the language of paragraph 2 of the *Memorandum of Understanding*, Plaintiff has failed to establish that it has a strong likelihood of success on the merits. However, we cannot conclude at this point that it has not met the minimal burden of establishing a less than negligible likelihood of success.

## B. No Adequate Remedy at Law

Defendants are building an unprecedented wind power project in Illinois. Plaintiff submits that its losses will be more than simply money damages because it will be put at a competitive disadvantage in the development of future such projects in Illinois if its turbines are not involved in the first such project. Thus Plaintiff will lose the goodwill that accrues to the exclusive supplier of wind turbines for the first project. We are not convinced that this is so. To agree with Plaintiff's conclusions we would have to assume first, that the Gamesa/Navitas project will be successful. For only if the project is successful will Defendants gain a competitive advantage over the Plaintiff. If the project is unsuccessful, the opposite will likely be true. Second, we would have to discount product differences. That is, we would have to assume that Plaintiff's

product is neither superior nor inferior to the Gamesa's wind turbine in order to conclude that Plaintiff's failure to make the first sale would make any significant difference in its ability to market its wind turbines. Third, we would have to assume that future Illinois purchasers of wind turbines would be ignorant of the fact that Navitas was in essence purchasing from itself when it determined to use Gamesa's turbines for its project. Under such circumstances it is not likely that future consumers will infer that Gamesa's turbines have been judged superior to those of NEG. For purposes of this temporary restraining order we are not convinced that the mere fact that Plaintiffs will not be the first to sell turbines in Illinois is sufficient to establish a competitive disadvantage resulting in an inadequate remedy at law.

## C. Irreparable Harm

Plaintiff argues that its loss in goodwill will be irreparable if Defendants continue to use a competitor as a supplier. We fail to see what loss of goodwill is being referred to. In its memorandum Plaintiff describes the lost opportunity to gain experience with installing the wind turbine project as constituting irreparable harm. Plaintiff also identifies a blow to its reputation resulting from not having been chosen as the supplier of turbines for this initial project. This kind of "irreparable harm" it seems to us would exist in every breach of contract action. The kind of collateral benefits in client relationships and goodwill gained from successfully filling any commercial contract are not the stuff of irreparable harm. The only possible difference we see between the present situation and the ordinary run of the mill breach of contract action is that Plaintiff asserts that this is the first such project in the state of Illinois. But surely it is not the first such project anywhere and the mechanics of installing wind turbines in Illinois can not be

that different from what is involved in doing so in any other venue. As pointed out in Navitas' response, Plaintiff has been identified as a possible supplier of turbines for two other wind power projects in Illinois alone. In one such project Plaintiff is identified as having installed over 10,500 turbines over the past twenty years both internationally and in the Midwest. It appears to us that Plaintiff is attempting to bootstrap a possible ordinary breach of contract action to the level of irreparable harm. For purposes of this temporary restraining order we find that Plaintiff has failed to establish irreparable harm.

D. The Balance of Harms

This consideration is also a close call for restraining an ongoing construction project is bound to be costly for the party restrained. Further, Plaintiff does not ask us merely to restrain the Defendants, but also to affirmatively force them to purchase Plaintiff's turbines for the project. As Defendant Navitas points out forcing it to halt its construction, remove the turbines already in place and re-engineer the site in order to install the Plaintiff's turbines, which are apparently structurally incompatible with the foundations already in place for the turbines, will result in a significant degree of economic waste and expense.

## CONCLUSION

For the foregoing reasons Plaintiff's motion for a temporary restraining order is DENIED. Plaintiff's motion for a preliminary injunction is referred to Magistrate Judge Nolan.

SO ORDERED                    ENTERED: September 9, 2003

RONALD A. GUZMAN
**United States Judge**